178 So. 13

**CHAPPELL v. SOLOMON.**

4 Div. 989.

Supreme Court of Alabama.

Dec. 16, 1937.

Halstead & Smith, of Headland, for appellee.

F. M. Gaines, of Dothan, for appellant.

THOMAS, Justice.

The suit was ejectment based on tax deeds. The judgment was in favor of defendant as to the lands sued for and in favor of plaintiff as to taxes paid on said lands.

The complaint was in two counts based on alleged title under tax sales of July 6, 1929, and September 15, 1933, respectively. The plaintiff demanded a trial by jury and the production of an abstract "in writing of the title on which defendant relied as a defense to the suit." On motion of the defendant tenant, the landlord was made a party defendant and ordered to come in and defend in said cause. The defendants pleaded the general issue.

The plaintiff introduced in evidence tax assessments for the years 1928, 1929, 1934, and 1935, which, being verified by Mr. E. G. Collins, tax assessor for Houston county, were admitted in evidence over the objection of the defendant.

The plaintiff offered the tax collector of the county, duly qualified as a witness, and as to the tax records he certified that the copies of assessments for the years in question were true and correct as affecting said lands. Check evidencing payment of

taxes in amounts indicated was admitted in evidence. The delinquent tax docket for the county was authenticated by the clerk in the probate office and the record containing decree of sale of the lands in question for taxes, pursuant to the decree to that end, was duly made for the years indicated in said record. The clerk in the office said that the taxes had not been paid. It is further shown by the evidence that the lands in question were assessed to one W. H. Clark, sold for delinquent taxes, bought in by the state on July 6, 1929, and purchased and transferred by the state to appellee, D. G. Solomon.

As to such lands, assessed to W. H. Clark, the record shows failure of payment of taxes on assessment; sale of said lands by the state on September 15, 1933; and purchase of same by D. G. Solomon for the sum of $92.17, which amount was duly remitted to the treasurer.

D. G. Solomon, the plaintiff, testified in his own behalf that he was familiar with the lands in question located in Houston county, that he owned the land at the time of the trial, having acquired same by purchase from the Tax Commission and received a deed thereto. He further testified that he had lost the deed and had made diligent search for it without finding the same. The court held that there was no evidence of the original tax sale, and, as there was nothing shown to support introduction of certified copy of said deed, sustained the objection of defendant to introduction of the last-named deed.

Witness Smith Hall for the plaintiff testified that the tax docket identified and introduced in evidence "does not show that the lands in question were sold for taxes for the year 1929" and objection of the defendant was duly sustained, that being an issue of fact, which was being tried. The witness was further asked "Is there any other evidence in the probate office that shows anything pertaining to that sale, other than this?" Defendant objected to the question, and, the same being overruled, witness testified that there were no other dockets or books or such records with reference to the sale and that the records in evidence were the only records pertaining to the sale and the only record showing to whom the land was sold in the probate office.

█ Plaintiff then offered in evidence a certified copy of the deed issued by Mr. S. R. Mutler, of the State Tax Commission, dated September 15, 1933, to D. G. Solomon. Said deed was introduced for the purpose of establishing lien on the lands involved in the suit for taxes paid and interest and costs. There was no error in overruling defendant's objection to such testimony limited to the purpose stated, the court observing that it was admitted for "that one particular purpose."

The cause was submitted to the jury and the verdict was: "We, the jury, find for the defendant for the possession of the land sued for. We find for the plaintiff on his motion to ascertain the taxes, due on the lands involved in this suit together with interest on same in the sum of $265.14 together with the cost in this suit."

The judgment rendered was pursuant to the verdict of the jury.

█ The question, therefore, for decision is the giving in writing of the general affirmative charge as requested for the plaintiff (appellant) for the sum of $265.14, the amount of taxes, and interest.

The court instructed the jury in oral charge as follows:

"I am giving you affirmative instructions to find for the plaintiff for $265.14, which is the sum total of the taxes due on the lands plus interest at the rate of 15% per annum, which, under the statute, he is entitled to recover. As I have stated before, if you care to calculate over those items I have outlined to you, you can do so.

"Now, as this form of verdict is a little out of the ordinary, your verdict under the affirmative instructions as given you by the Court as to the plaintiff and as to the defendants, I have prepared a form of verdict for you to use: We, the jury, find for the defendant for possession of the lands sued for. We find for the plaintiff on his motion to ascertain the taxes due on the lands involved in this suit, together with interest on same, in the sum of $265.14, together with cost in this suit. That would be your prepared verdict under the affirmative instructions given to you by the Court. You may re-write that verdict if you see fit, or you can use the form I have given you."

The defendant excepted to a portion of the court's charge, as follows: " * * * to that portion referring to 1929, 1930 and 1931, also that portion of the Court's oral charge instructing that 15% per annum be calculated by the jury, also to the affirma-

tive charge given the jury for the calculation of the amount of taxes."

The Acts of Alabama 1919, pp. 352–361, §§ 240–269, inclusive, provide for the sale of real estate for taxes. The verdict rendered is silent as to any year for which the taxes are due. It has been held that the statute (section 3096 of the Code) operates as a lien for taxes, state and county, in and to the lands sold, "both as to the taxes paid by said sale and as to taxes subsequently paid by the purchaser." Section 3101 of the Code of 1923, provides: "If, in any suit brought by the purchaser, or other person, claiming under him, to recover the possession of lands sold for taxes, a recovery is defeated on the ground that such sale was invalid for any other reason than that the taxes were not due, the court shall forthwith, on the motion of the plaintiff, ascertain the amount of taxes for which the lands were liable at the time of the sale, and for the payment of which they were sold, with interest thereon from the date of sale, and the amount of such taxes on the lands, if any, as the plaintiff, or the person under whom he claims, has, since such sale, lawfully paid or assumed by the state after its purchase, with interest thereon from the date of such payment, the interest on both amounts to be computed at the rate of fifteen per cent per annum; and the court shall thereupon render judgment against the defendant in favor of the plaintiff for the amount ascertained, and the costs of the suit, which judgment shall constitute a lien on the lands sued for, and payment thereof may be enforced as in other cases."

This court recently declared of these statutes that it would be unjust for the owner to recover his land from a tax purchaser, "on account of the irregularity of the sale under which it was sold for taxes, and not refund to him the taxes, costs and expenses of the sale, for which he, the owner, was liable and should have paid. Otherwise, owners of taxable property would be encouraged not to pay their taxes, and speculate on the chances,—far more than equal,—of a recovery of the land from the purchaser, because of irregularities in the assessment and sale. So it was, by that and other sections of the Code, the state has sought to protect purchasers at tax sales in providing a security and a remedy for the money they have paid out for delinquent owners, when the title they acquired from the state was invalid, because of irregularities committed by the officers of the state." Sheffield City Co. et al. v. Tradesman's National Bank, 131 Ala. 185, 191, 32 So. 598, 600, and Worthington v. Clapp, 227 Ala. 142, 149 So. 73. That is to say, the assignment of the tax lien in force through this procedure was to include and secure payment of the items which "the tax liens cover, costs incident to a sale for taxes, and penalties which are added to and become part of the taxes collectable." Worthington v. Clapp, supra; Chesnutt v. Morris, 223 Ala. 46, 135 So. 344.

It would appear from the above that there was no error in the trial court instructing the jury that the amount of taxes paid and required to be paid as such is to be calculated with interest on the amount at the rate fixed by the statute, to wit, 15 per cent. per annum from the date the same was paid to the time of the ascertainment on trial and recovery by judgment. In the case of Henderson et al. v. Simmons, 234 Ala. 329, 174 So. 491, the statute was again considered and the holding was that a defendant in statutory action of ejectment, who claims under a void tax sale and deed, was entitled to judgment for the amount paid in taxes, with statutory interest and costs, and also for all subsequent taxes paid by defendant, including taxes accruing after tax sale, and the current taxes assumed by the defendant, unless plaintiff should in the meantime pay such current taxes. Revenue Laws of Alabama 1929, p. 174, § 284; Code of Alabama 1923, § 3101.

Appellant insists that there was error because the matter of such ascertainment was submitted by the court to the jury. That was done under the proceeding provided for in section 282, page 374 of the Acts of 1935. Moreover the court made the ascertainment for the years in controversy and submitted the same to the jury under the general affirmative instruction given.

It results from the foregoing that there was no reversible error that intervened at the trial, and that the judgment of the circuit court should be affirmed. It is so ordered.

Affirmed.

ANDERSON, C. J., and BROWN and KNIGHT, JJ., concur.